IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CHARLES LEON BARTON,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } Case No.: 2:12-CV-03755-RDP |
| | } |
| **MICHAEL J. ASTRUE,** | } |
| **Commissioner,** | } |
| **Social Security Administration,** | } |
| | } |
| **Defendant.** | } |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff, Charles Leon Barton, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").

**I.      Proceedings Below**

The Social Security Administration initially denied Plaintiff's claims on July 29, 2010. (Tr. 65). Unsatisfied with the Commissioner's decision, Plaintiff then requested a hearing before an Administrative Law Judge. (Tr. 76). Plaintiff's request was granted (Tr. 81), and a video hearing was held on November 14, 2011, before Administrative Law Judge Michael L. Brownfield (the "ALJ"). (Tr. 31-60). In his decision dated December 14, 2011, the ALJ concluded that Plaintiff had not been under a disability within the meaning Sections 216(i) and 223(d) of the Social Security Act since May 19, 2010, the date Plaintiff's applications were filed. (Tr. 17-27). The Appeals Council then denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3), thus making the

Commissioner's decision final and a proper subject of this court's judicial review. *See* 42 U.S.C. §§ 405(g), 1381(c)(3).[1]

**II.    Facts**

Plaintiff was forty-two years old on the alleged onset date. (Tr. 120, 127). Plaintiff completed his GED, one year of college, and "Business Office Training," which included bookkeeping and accounting. (Tr. 41, 142). He previously worked as a heating, ventilation, and air-conditioning mechanic and a painter. (Tr. 44-45, 142). His date last insured was September 30, 2010. (Tr. 137).

Although Plaintiff filed a prior claim for disability insurance benefits which was denied in 1992, in the present application, Plaintiff alleges he became totally disabled on March 1, 2005, due to back pain, shoulder problems, and shortness of breath. (Tr. 120, 127, 141). At the hearing before the ALJ, Plaintiff testified that he could no longer climb ladders and carry paint. (Tr. 47). He stated that he could walk to the sidewalk, but had to stop to catch his breath. (Tr. 47). He testified that he could wash dishes at the sink for ten to fifteen minutes, but would need thirty to forty-five minutes to lie down, stretch his back and recover. (Tr. 48). He testified he can sweep the house and takes care of his dog, which is a cross between a pit bull and a border collie, and takes her for walks, but runs out of breath doing so. (Tr. 48). Plaintiff, who reported no problems with personal care, prepares his own meals daily, and can perform light housework. (Tr. 147-48). Plaintiff also leaves the house daily, washes laundry, and shops for food. (Tr. 149). Plaintiff does not have a driver's license because it was taken away relating to a DUI arrest around 1990. (Tr. 38).

---

[1] Plaintiff elected not to file a brief and requested that a decision be rendered on the existing record. (Doc. # 9).

Plaintiff underwent a consultative examination in July 2010 with Dr. Samia Sana Moizuddin. (Tr. 182-88). Plaintiff reported to Dr. Moizuddin that he had last worked at Mountain Heating and Cooling in 2006 until he was laid off. (Tr. 183). After losing his job, Plaintiff stated that he unsuccessfully tried to work for himself. (Tr. 183). Plaintiff claimed he was disabled due to back pain, hip pain, and breathing difficulties, but stated he did not see anyone for pain management. He reported smoking two to three packs of cigarettes a day for thirty-five years. (Tr. 183). On exam, Dr. Moizuddin noted Plaintiff's lungs had no rales, rhonchi, wheezing, or rubs. (Tr. 184). Although Dr. Moizuddin noted that Plaintiff had a left leg limp related to a hip replacement (Tr. 40-41), and that the left leg was shorter than the right, he also noted that Plaintiff could perform a full squat and toe walk. (Tr. 184). Dr. Moizuddin further noted Plaintiff had normal range of motion in his spine, hip, and extremities (Tr. 186-87).

Dr. Richard Whitney performed a physical residual functional capacity assessment of Plaintiff on July 28, 2010. (Tr. 191-98). Dr. Whitney found that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds, stand or walk about six hours in an 8-hour day, sit about six hours in a day, and perform unlimited pushing and/or pulling (including the operation of hand or foot controls), and placed no postural, manipulative, visual, or communicative limitations on Plaintiff. (Tr. 191-98).

At the November 14, 2011 hearing before the ALJ, Plaintiff testified that his primary care physician, Dr. Carter, was at Cooper Green Hospital, and that he had been seeing her for a little over a year. (Tr. 49). His cardiologist, Dr. Taylor was also at Cooper Green. (Tr. 55). It appears from the medical records contained in the file that Plaintiff first sought treatment at Cooper Green Hospital on October 8, 2010, for chest pain and problems breathing. (Tr. 216). On that admission,

Plaintiff reported that he had not seen a doctor in years, that he smoked more than a pack of cigarettes a day, and that he had used marijuana. (Tr. 216-17). Upon discharge on October 10, 2010, Plaintiff was given a primary diagnosis of atrial flutter, and secondary diagnoses of probable COPD secondary to tobacco use, hyperlipidemia, and Vitamin B12 deficiency. (Tr. 221-22).

Plaintiff apparently began treatment with Dr. Adrienne Carter after this admission. (Tr. 200-62). Dr. Carter performed a physical capacities evaluation, a clinical assessment of pain, and a clinical assessment of fatigue/weakness on Plaintiff on September 21, 2011. These forms were drafted and submitted by Plaintiff's counsel. (Tr. 258-62). She found Plaintiff able to lift twenty pounds occasionally and ten pounds frequently; sit for four hours in an eight-hour day; stand/walk for four hours in an eight-hour day; require a sit/stand option; occasionally push and pull with foot, leg, and arm controls; and occasionally climb, stoop, and reach overhead. She also found that Plaintiff could operate a motor vehicle and work around hazardous machinery. (Tr. 258). She opined that Plaintiff had some pain, but that it does not prevent functioning in everyday activities or work, that physical activity contributed to some increase in pain, but not to such an extent as to prevent adequate functioning, and that pain medication may cause some side effects to be present, but not to such a degree as to create serious problems in most instances. (Tr. 259-60). As to Plaintiff's fatigue, Dr. Carter opined that fatigue is present to such an extent as to negatively affect adequate performance of daily activities or work, that physical activity increased fatigue to such a degree as to cause total abandonment of tasks, and that drug side effects can be expected to be severe and limit effectiveness due to distraction, inattention and drowsiness. (Tr. 261-62).

Dr. William Crunk, a vocational expert, testified at the hearing before the ALJ. (Tr. 56). The ALJ asked the VE to assume that Plaintiff could lift twenty pounds occasionally and ten pounds

frequently; sit for six hours in an eight-hour day; stand/walk for four hours in an eight-hour day; required a sit/stand option; occasionally push and pull with foot, leg, and arm controls; and occasionally, climb, stoop, reach overhead, and lift. (Tr. 57). He was also asked to assume that Plaintiff could have no exposure to extreme cold, heat, or concentrated pulmonary irritants, and should not work around unprotected heights. (Tr. 57). Dr. Crunk testified that someone of Plaintiff's age, education, and experience could perform work in the national economy even if he was limited to a reduced range of light work.[2] (Tr. 57-58). The VE testified that such a person could perform the duties of an information clerk, assembler, and order clerk. (Tr. 57-58). The VE testified that there were close to 3,000 information clerk positions in Alabama, and more than 400,000 nationally (Tr. 57); there were approximately 3,200 light assembler positions in Alabama and 290,000 nationally (Tr. 58); there were 1,800 sedentary assemblers in Alabama and 182,000 nationally (Tr. 58); and there were 2,600 sedentary clerical worker positions in Alabama, and more than 100,000 nationally (Tr. 58).

### III.    The ALJ's Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity " is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b) (2012).

gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that: (1) Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of disability (Tr. 19); (2) Plaintiff is afflicted with severe impairments - probable COPD secondary to tobacco use, chronic back pain, and status post hip replacement surgery (Tr. 19); and (3) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1." (Tr. 20). After consideration of the record, the ALJ then concluded that Plaintiff has the residual functional capacity to perform light work as defined by 20 C.F.R. 404.1567(b) and 419.967(b). He noted that Plaintiff was able to lift twenty pounds occasionally, and ten pounds frequently, and is capable of sitting for six hours out of an eight-hour workday and stand or walk for four hours out of an eight-hour workday. (Tr. 20). He determined that Plaintiff should have a sit-stand option and can occasionally push and/or pull with foot or leg and arm controls. He found Plaintiff able to do occasional climbing, stooping, overhear reaching and lifting, but should have no exposure to extremes of cold, heat or concentrated amounts of pulmonary irritants. (Tr. 20). Finally, after reviewing all of the record evidence and hearing testimony, including the testimony of the vocational expert, the ALJ determined that, although Plaintiff could no longer perform past relevant work, he was able to perform duties of an information clerk, assembler, and order clerk. (Tr. 25-26). Therefore, the ALJ found that Plaintiff had not been under a disability from March 1, 2005 through the date of his decision. (Tr. 27).

**IV.    Plaintiff's Argument for Reversal**

Plaintiff elected not to file a brief outlining his arguments for remand or reversal and requested that a decision be rendered based on the existing record. (Doc. #9). As indicated in the briefing letter to counsel (Doc. #8), the court does not require briefs. The court has reviewed the

ALJ's decision under the appropriate standard of review without drawing inferences or conclusions based upon Plaintiff's failure to file a brief supporting remand or reversal.

## V.     Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  It is something "more than a mere scintilla." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *Martin*, 894 F.2d at 1529 (citing *Bloodsworth*, 703 F.2d at 1239).  Legal standards are reviewed de novo. *Moore*, 405 F.3d at 1211.

## VI.    Discussion

After careful review, the court concludes that the ALJ's fact finding is supported by substantial evidence and that he applied correct legal standards.

8

### A.      Substantial Evidence Supports the ALJ's Finding That Plaintiff Has the RFC For a Reduced Range of Light Work

The record shows that all of Plaintiff's independently-sought medical treatment records postdate the Commissioner's initial denial of Plaintiff's claims on July 29, 2010. (Tr. 65, 182-262). Most of the medical evidence in the record was created as a part of the application process, including a consultative examination by Dr. Moizuddin, the RFC Assessment by Dr. Whitney, and the physical capacities evaluation, clinical assessment of pain, and clinical assessment of fatigue/weakness by Dr. Carter. (Tr. 182-262).

The ALJ considered all of the evidence carefully and determined that Plaintiff's medical records support a finding that Plaintiff could perform a reduced range of light work. (Tr. 22-24). Although Plaintiff went to the hospital in October 2010 complaining of shortness of breath (Tr. 216), objective evidence showed Plaintiff's condition was at worst mild. (Tr. 214). Plaintiff's electrocardiogram was normal, showing no pericardial effusion, normal ejection fraction, no mitral regurgitation, no tricuspid regurgitation, and no aortic regurgitation. (Tr. 214). X-rays of Plaintiff's lungs showed only minimal fibrosis in the left lung with no evidence of acute infiltrate or atelectasis. (Tr. 215). Plaintiff had no musculoskeletal symptoms and was normal on exam. (Tr. 217-18). Plaintiff reported at this time that he was not aware of any medical problems and had not sought medical treatment in years. (Tr. 216).

An April 2011 diagnostic imaging revealed only mild degenerative changes in Plaintiff's cervical spine; degenerative changes but an otherwise normal study of his thoracic spine; and degenerative changes but well maintained vertebral heights and no acute problems in his lumbar spine. (Tr. 22, 240). A series of July 2011 pulmonary function testing revealed only mild airflow

obstruction with a mild reduction in ventilator capacity (Tr. 22, 252). Thus, this medical evidence supports the ALJ's RFC finding.

Plaintiff's daily activities further support the ALJ's RFC finding. Plaintiff fed, watered, and walked his dog. (Tr. 147). He had no problems with personal care, prepared his own meals daily, and could perform light housework. (Tr. 147-48). Plaintiff also left the house daily, washed laundry, and shopped for food. (Tr. 149).

In evaluating Plaintiff's RFC, the ALJ took Dr. Carter's medical opinion into consideration, incorporating much of her opinion into his RFC. (Tr. 24). However, he determined that a portion of the opinion was entitled to little weight because it was inconsistent with objective findings in the record. (Tr. 24, 258-62).

After reviewing all of this evidence, the ALJ also concluded that, based upon Plaintiff's RFC, there are jobs that exist in significant numbers in the national economy that he could perform. (Tr. 26-27). This conclusion is supported by substantial evidence in the record, including the medical evidence (Tr. 200-62), Dr. Whitney's physical residual functional capacity assessment (Tr. 191-98), and the testimony of the vocational expert. (Tr. 56-58). Therefore, the ALJ's decision is supported by substantial evidence.

### B. The ALJ Properly Employed the Pain Standard in Assessing Plaintiff's RFC

In order to establish a disability based on testimony of pain and other symptoms, a claimant must satisfy two parts of a three-part test. That is, the claimant must show (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225; *see Holt v. Sullivan*, 921 F.2d

1221, 1223 (11th Cir. 1991).  In determining whether the pain standard is met, the credibility of the claimant's testimony must be considered. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir.1988).  If the ALJ discredits a claimant's subjective testimony, he must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Id.* (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).

It does not follow that because the Eleventh Circuit has a pain standard that the ALJ must always include mention of alleged pain in a claimant's RFC. The ALJ is required to apply the pain standard "when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote*, 67 F.3d at 1560. The Eleventh Circuit has consistently reiterated that an ALJ must articulate explicit and adequate reasons for discrediting subjective pain testimony. *See Hale*, 831 F.2d at 1011; *Foote*, 67 F.3d at 1561-62; *Wilson*, 284 F.3d at 1225; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Thus, application of the pain standard does not mean that a claimant's RFC must automatically include mention of pain, so long as the ALJ's findings articulate explicit and adequate reasons for discrediting subjective pain testimony. *See id.*

The court finds that the ALJ properly applied the *Holt* pain standard, and that his findings are supported by substantial evidence.  Although Plaintiff's RFC does not mention pain specifically, the ALJ's findings and discussion indicate that the pain standard was indeed applied and that the ALJ addressed not only Plaintiff's allegations of pain, but also his allegations of fatigue/weakness. (Tr. 22-23).

The ALJ specifically cited to 20 C.F.R. §§ 404.1529 and 416.929, "which contain[] the same language regarding the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard." *Wilson*, 284 F.3d at 1226 (citing *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1214-15 (11th Cir. 1991)). (Tr. 21). The ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged [fatigue/weakness] symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC assessment. (Tr. 23). Further, the ALJ found that "[w]hile there is sufficient objective medical evidence to determine that claimant has some degree of back pain resulting from his conditions, the limiting effects alleged by the claimant are not entirely supported by the medical evidence of record." (Tr. 23). In conclusion, the ALJ found "[t]here is every indication that the claimant could perform a range of work at the light exertional level with a sit-stand option and restrictions for occasional pushing and/or pulling ... and occasional climbing, stooping, overhead reaching, lifting." (Tr. 23). The ALJ applied the law correctly on this issue, and his findings are supported by substantial medical evidence.

**VII.   Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this    24th    day of February, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE